**McDANIEL v OHIO EDISON CO.**

Ohio Appeals, 2nd Dist, Clark Co

No 419.   Decided Dec 16, 1940

H. E. Spencer, Springfield, and Harry C. Hull, Springfield, for plaintiff-appellee.

Hugh Hagan, Springfield, for defendant-appellant.

**OPINION**

By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Clark County, Ohio.

Plaintiff's action was predicated upon an industrial claim allegedly sustained while acting as an employe of the defendant company, his injuries having been incurred through a fall from the roof of a house which he was painting. The defendant company was a self-insurer, having qualified as such pursuant to law.

The accident and resultant injuries occurred on July 9, 1937. In due time claim was submitted and heard by The Industrial Commission, the latter find-

ing that the injuries had not been sustained in the course of employment. The proceedings progressed to a rehearing, denial of claim, filing of petition in the Common Pleas Court, and submission of cause to a jury, verdict for plaintiff, overruling motion for new trial and entering of judgment on the verdict. Within due time defendant gave notice of appeal, thus lodging the cause in our court.

. Appellant's assignment of errors are set out in three separately numbered specifications, as follows:

. 1. The judgment is not sustained by sufficient evidence.

2. The judgment is contrary to law.

3. The Common Pleas Court erred in refusing to direct a verdict for appellant (defendant) on defendant's motion for such direction.

In appellant's brief these assignments of error are presented as one, which may be summarized that the verdict and judgment were contrary to law.

The sole and only question at issue is whether or not the injuries grew out of and in the course of plaintiff's employment.

It is the contention of the defendant that at the time of the accident plaintiff was not working for the defendant company, but, on the contrary, was painting a house occupied and owned by an employe of the defendant company, and under a separate and independent contract.

Plaintiff entered the employ of the defendant company on or about January, 1936. His employment was upon an hourly basis and not for a fixed period. He started at a wage of 65c an hour, which later was increased to 75c an hour. He was recognized by his superiors as a very efficient painter and the heads of the various departments moved him around as he would complete one job in an effort to give him steady work. These various heads of departments arranged among themselves and it is claimed, so informed plaintiff, that where possible during slack times he might be given work outside of work for the company. Such a situation arose on or about February,

1937, when a Mr. Ulman, one of the department heads, took Mr. McDaniel from the company employment to do some painting at his home. This work was done on the same hourly rate, and when completed was paid for by Mr. Ulman.

Mr. Roy H. Goss, another department head of the defendant company, found he had some painting to do at his home and arranged to have the work done by the plaintiff. He first talked to Mr. McDaniel about the work a few weeks prior to the accident. Mr. Goss, his wife and daughter, after working hours in the evening, drove to Mr. McDaniel's home and had him go with them to their residence, where Mr. Goss asked plaintiff to give him an estimate as to the amount of paint required. Mr. McDaniel measured the house, talked over with Mr. Goss the various colors and also talked with Mrs. Goss as to the condition of the shingles on the house, and she says also talked as to the kind of paint that would be best for the roof work. At the time of the conversation with Mrs. Goss, she was on the porch, knitting.

Following the estimate, Mr. Goss ordered the paint in the different colors from a distributor in Cleveland, and in due time the paint was shipped to him and delivered at the plant of the defendant company. The shipping tag was marked "Roy H. Goss, care Ohio Edison Company, Springfield, Ohio."

On July 8, 1937, about the middle of the forenoon, Mr. McDaniel when to the Goss residence to do this painting. Some of the ladders and other equipment were procured from Mr. McDaniel's home and others were borrowed from the plant of the Edison Company. On the following day, July 9th, the plaintiff met with his accident, falling from the roof and breaking his arm.

It is plaintiff's claim that he did not know that the residence property belonged to Mr. Goss. We think the facts and circumstances presented through the record conclusively deny this claim. Furthermore, it is argued that regardless of the ownership of the property being painted, plaintiff was ordered to

do the work by his superior without any intimation or suggestion that he was to be paid by Mr. Goss and not by the company.

The manifest weight of the evidence also controverts this contention. Of course, at the time of the accident he had not done enough work to have a pay day, hence the situation would be somewhat different than it was in the Ulman case. The determination of this question requires a very careful reading and analysis of the testimony of each and every witness. To include in this opinion an analysis of all the testimony, would render the opinion unnecessarrily lengthy. Suffice it to say that after a careful reading and analysis, we arrive at the conclusion that plaintiff's accident did not arise out of or in the course of the employment with the defendant company. He was privately employed to do this work by Mr. Goss, and so understood it. In our judgment people with reasonable minds could not arrive at a different conclusion. It, therefore, follows that the verdict and judgment of the trial court will be reversed and final judgment entered in favor of the defendant.

Exceptions will be allowed.

HORNBECK, PJ. & GEIGER, J., concur.